**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------

ELAINE WANG,                                     :
                                                 :
            Plaintiff,                           :     Civil Action No. _____
                                                 :
v.                                               :
                                                 :     **COMPLAINT FOR VIOLATIONS OF**
NATIONAL GENERAL HOLDINGS CORP.,                 :     **SECTIONS 14(a) AND 20(a) OF THE**
BARRY KARFUNKEL, ROBERT                          :     **SECURITIES EXCHANGE ACT OF**
KARFUNKEL, BARRY ZYSKIND,                        :     **1934**
DONALD DECARLO, PATRICK FALLON,                  :
BARBARA PARIS, JOHN MARSHALECK,                  :     **JURY TRIAL DEMANDED**
and JAY NICHOLS,                                 :
                                                 :
            Defendants.                          :
----------------------------------------------------------

        Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon

personal knowledge:

        1.      This is an action brought by Plaintiff against National General Holdings Corp.

("National General or the "Company") and the members National General board of directors (the

"Board" or the "Individual Defendants" and collectively with the Company, the "Defendants")

for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), in connection with the proposed acquisition of National General by The

Allstate Corporation ("Allstate") and Allstate's affiliates.

        2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 7, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Bluebird Acquisition Corp. ("Merger Sub") will merge with and into National General with National General surviving the merger and becoming an indirect wholly owned subsidiary of Allstate (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each National General common share issued and outstanding will be converted into the right to receive $32.00 in cash with a special dividend of $2.50 per share if certain conditions are satisfied (the "Merger Consideration").

3.     As discussed below, Defendants have asked National General stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.     It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to National General stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because National General in incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of National General common stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Barry Karfunkel has served as a member of the Board since 2010 and is the Company's Co-Chairman of the Board and Chief Executive Officer.

11.      Individual Defendant Robert Karfunkel has served as a member of the Board since 2016 and is the Company's Co-Chairman of the Board and President.

12.      Individual Defendant Barry Zyskind has served as a member of the Board since 2013.

13.     Individual Defendant Donald DeCarlo has served as a member of the Board since 2010.

14.     Individual Defendant Patrick Fallon has served as a member of the Board since 2013.

15.     Individual Defendant Barbara Paris has served as a member of the Board since 2013.

16.     Individual Defendant John Marshaleck has served as a member of the Board since 2016.

17.     Individual Defendant Jay Nichols has served as a member of the Board since 2017.

18.     Defendant National General is incorporated in Delaware and maintains its principal offices at 59 Maiden Lane, 38th Floor, New York, New York 10038.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "NGHC."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

21.     National General, a specialty personal lines insurance holding company, provides various insurance products and services in the United States, Bermuda, Luxembourg, and Sweden. The Company's Property and Casualty segment offers standard, preferred, and nonstandard automobile insurance products; recreational vehicle (RV) insurance products that carry RV-specific endorsements comprising automatic personal effects coverage, optional

4

replacement cost coverage, RV storage coverage, and full-time liability coverage; and homeowners insurance products consisting of property and liability coverages for one-and two-family, and owner-occupied residences; and additional personal umbrella coverage to the homeowners. It also provides small business automobile insurance products, which covers liability and physical damage caused by light-to-medium duty commercial vehicles; motorcycle insurance products for various types of motorcycles, golf carts, and all-terrain vehicles; and lender-placed insurance products, including fire, home, and flood products, as well as collateral protection insurance and guaranteed asset protection products for automobiles. It sells its products through retail store fronts, web/mobile, phone contact centers, and kiosks; and agents and affinity partners. The Company's Accident and Health segment provides accident and non-major medical health insurance products, such as accident/AD&D coverage in the event of bodily injury or death due to accidental means; hospital indemnity; short-term medical plans; cancer/critical illness policies; stop loss programs; medicare supplement insurance policies; basic dental coverage; and life insurance products for individuals. It sells its products through agents, managing general underwriters, employers, Internet; and directly. The Company was formerly known as American Capital Acquisition Corporation. National General was founded in 1939 and is headquartered in New York, New York.

22.     On July 7, 2020, National General announced that they had entered into a proposed transaction:

> NORTHBROOK, Ill., July 07, 2020 (GLOBE NEWSWIRE) -- The Allstate Corporation (NYSE: ALL) has agreed to acquire National General Holdings Corporation for approximately $4 billion in cash, or $34.50 per share. The transaction is expected to close in early 2021, subject to regulatory approvals and other customary closing conditions.

"Acquiring National General accelerates Allstate's strategy to increase market share in personal property-liability and significantly expands our independent agent distribution," said Tom Wilson, Chair, President and CEO. "The acquisition increases personal lines premiums by $4.0 billion and market share by over 1 percentage point to 10%. National General's business and technology platforms will be utilized to further strengthen Allstate's existing independent agent businesses. The transaction will be accretive to adjusted net income earnings per share and return on equity beginning in the first year."

National General provides a wide range of property-liability products through independent agents with a significant presence in non-standard auto insurance. The company also has attractive Accident and Health and Lender-Placed Insurance businesses. Gross premiums written were $5.6 billion, which generated operating income of $319 million in 2019.

"National General's operating expertise has enabled us to serve customers and independent agents well as we have grown both organically and through acquisition," said Barry Karfunkel, Co-Chairman and CEO of the New York-based insurer. "We are excited about combining our team's expertise and commitment with Allstate to become a top-five personal lines carrier for independent agents while offering a broader array of products. National General's shareholders are also benefiting by unlocking the value created over the last decade."

**Transaction Details**

National General shareholders will receive $32.00 per share in cash from Allstate, plus closing dividends expected to be $2.50 per share, providing $34.50 in total value per share. Allstate will fund the share purchase by deploying $2.2 billion in combined cash resources and, subject to market conditions, issuing $1.5 billion of new senior debt. Allstate expects to maintain its current share repurchase program.

National General's board of directors has approved the transaction, which includes customary terms and conditions, including a breakup fee of $132.5 million. A voting agreement has also been signed with entities controlling 40% of National General's common shares to vote for the transaction.

MSD Capital, which owns approximately 7.4% of National General's outstanding common shares, also supports the transaction. "As proud shareholders since 2013, we support the

decision of National General's board of directors to move forward with this strategic transaction," said John Phelan, Managing Partner and Co-Founder of MSD Capital, LP and MSD Partners, LP. Dan Bitar, a Managing Director of MSD Capital, added, "We believe the transaction is allowing National General's employees, customers and shareholders to benefit from the significant franchise value created by the management team over the last decade."

Ardea Partners LP was the exclusive financial adviser to Allstate, and Willkie Farr & Gallagher LLP was the company's legal adviser. J.P. Morgan Securities LLC was the exclusive financial adviser to National General, and Paul, Weiss, Rifkind, Wharton & Garrison LLP was National General's legal counsel.

23.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that National General's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

24.     On August 7, 2020, National General filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning National General Financial Projections*

7

25.     The Proxy Statement fails to provide material information concerning financial projections by National General management and relied upon by J.P. Morgan in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that National General management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     The Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (i) Diluted Operating Earnings Per Share and (ii) Underwriting Income, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly

understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

30.     With respect to J.P. Morgan's *Dividend Discount Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the Company's number of fully diluted shares outstanding as of July 6, 2020; (ii) present value of an estimated future dividend stream for the Company over a five-year period from 2020 through 2024; (iii) the inputs and assumptions underlying the range of discount rates ranging from 10.75% to 11.75%; (iv) the inputs and

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

assumptions underlying the use of terminal growth rate ranging from 1.50% to 2.50%; and (v) the terminal value of the Company and the assumptions used to derive the terminal value.

31.     With respect to J.P. Morgan's *Analysts Price Targets Analysis* for the Company, the Proxy Statement fails to disclose the price targets used by J.P. Morgan in the analysis and their sources.

32.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Proxy Statement with the intention of gaining stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no

adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of National General within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of National General, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of National General, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of National General, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above

was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 25, 2020                    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:   */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com
*Attorneys for Plaintiff*